FIREMEN'S INSURANCE COMPANY *v.* DOZIER.

4-4269

Opinion delivered May 11, 1936.

*Cravens, Cravens & Friedman,* for appellant.

*W. A. Bates* and *Donald Poe,* for appellee.

SMITH, J. Appellant insurance company issued appellee Dozier a policy of insurance in the sum of $1,000, which covered storm damage to the insured property. The roof of the insured building was blown off by a storm and the wallpaper in one of the rooms was ruined.

The policy was issued and delivered by M. C. Bird, the local agent of the insurance company, to Dozier, who reported the damage to Bird. The rain which followed the storm was still falling when Bird and Dozier went to the insured house. Bird gave orders for the immediate repair of the roof and these repairs were made at a cost of $136.37. An insurance adjuster inspected the roof and inquired its age, which he estimated would have lasted for twenty years. He was told the roof was eleven years old and he calculated its value at 9/20 of its replacement cost, or $61.37. He prepared a report or proof of loss based upon these findings which Dozier signed and acknowledged before a notary public. Dozier did not read this paper which he denominates the auditor's report. Bird, the local agent, had undertaken to repair the damages and he was not interested in the cost thereof. He was not then expecting to be paid any money.

A voucher was issued by the insurance company for $61.37, payable to Dozier's order, which was mailed to Bird, the local agent, who was also the cashier of the local bank. This draft was in form a voucher which recited that it was in full payment and final settlement of any and all claims for damages resulting from or relating to the storm. When the draft was presented to Dozier, he declined to cash it or to accept it, when he saw the amount for which it was drawn. The draft was held at the bank for about ninety days before it was finally indorsed by Dozier and deposited for collection for his account. After being indorsed and deposited, the draft was paid in due course, and it is now pleaded as an accord and satisfaction of the claim for damages for the recovery of which this suit was brought.

The law of this subject has been frequently and recently declared. A leading case on the subject, which has been often quoted and approved, is that of *Barham* v. *Bank of Delight*, 94 Ark. 158, 126 S. W. 394, where it was held that if a check or draft is given in satisfaction of a disputed claim and recites on its face that it is a payment in full, its acceptance constitutes an accord and satisfaction although the creditor protests at the time that it is not all that is due him. The creditor's option is to accept the check or to reject it. He cannot accept it as a part payment to be credited on the demand, when it was tendered as full payment and satisfaction of the demand.

Dozier recovered judgment for a less amount than the sum sued for, but he did recover judgment for damages in excess of the amount of the draft. Was this recovery barred by cashing the draft containing the recitals set out above? Ordinarily it would, but we think it was not under the facts of this case hereinafter set out.

As has been said, Dozier was not expecting a payment in money of his damages. Bird had undertaken to repair the damages and had assumed a personal obligation for the material and labor used in the repair of the roof which he personally paid. It was with Bird, as cashier of the bank, that Dozier deposited the draft for collection. Before the draft was finally indorsed and deposited there was considerable correspondence about it, induced by Dozier's refusal to receive it.

The State general agent for the insurance company and its chief adjuster for this State endeavored without success to induce Dozier to accept the draft. The Hughes Insurance Agency attempted also to settle the matter and employed M. H. Bird to assist. M. H. Bird was the notary who took Dozier's acknowledgment to the proof of loss. He is a brother of M. C. Bird, the local agent, who issued the policy and was present at the conference between Dozier and the insurer's State agent and its chief adjuster and heard the State agent tell Dozier to consult the Hughes Insurance Agency about settling the difference about the damages in excess of the draft.

740

Dozier testified that he was induced to indorse the draft by the statement of M. C. Bird, who had written the policy and who had the draft in his possession for delivery, that he would have the case reopened, and would see that Dozier got more money. Bird did not deny making this statement. Indeed, the effect of his testimony was to corroborate it, and it cannot, therefore, be said as a matter of law that the indorsement of the check was an accord and satisfaction. Bird was the insurer's agent and he knew when Dozier accepted and indorsed the draft that he was doing so in part and not in full payment of the disputed demand. At the time this controlling transaction took place, Bird was in effect acting as an adjuster for the insurer and it cannot therefore be said as a matter of law that the recitals in the draft, written some months before, are conclusive that the check was tendered as a settlement in full which could not otherwise be accepted. *The Home Insurance Co., of New York* v. *Hall, ante* p. 283, 91 S. W. (2d) 609.

There appears to be no error, and the judgment must be affirmed. It is so ordered.